IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISON

| | | |
|---|---|---|
| Angela Eunice, individually and on behalf of all those similarly situated, | ) ) ) | Civil Action No.: 2:21-cv-02010-BHH |
| Plaintiff, | ) ) | |
| v. | ) ) | **COMPLAINT** [JURY TRIAL DEMANDED] |
| Dan Ellzey, in his official capacity as Executive Director of the South Carolina Department of Employment and Workforce; The South Carolina Department of Employment and Workforce; and the State of South Carolina, | ) ) ) ) ) ) ) | |
| Defendant. | ) ) | |

Plaintiff, Angela Eunice ("Plaintiff") individually and on behalf of all others similarly situated, files this Class Action Complaint against Dan Ellzey in his official capacity as Executive Director of the South Carolina Department of Employment and Workforce ("Director Ellzey") and the South Carolina Department of Employment and Workforce (SCDEW), (collectively "Defendants") and respectfully alleges the following:

**<ins>INTRODUCTION</ins>**

1.    This is a class action brought to obtain injunctive relief and monetary damages based upon SCDEW's illegal cap on unemployment benefits depriving class members of benefits to which they are statutorily entitled.

2.    This action is brought against SCDEW and Director Ellzey, in his official capacity, for violations of Federal and South Carolina law including violations of the Social Security Act and its regulations; and violations of South Carolina law governing calculation of unemployment benefits and the maximum amount of benefits available.

3.      Since at least 2007, SCDEW has capped the weekly benefit amount of unemployment benefits at $326.00.

4.      The $326.00 cap was not implemented pursuant to any regulation and directly conflicts with South Carolina law on the calculation of unemployment benefits.

5.      Specifically, the $326.00 cap is in conflict with S.C. Code Ann. § 41-35-40, which provides that the maximum weekly benefit amount is required to be "sixty-six and two-thirds percent of the state wide weekly wage."

6.      Since at least 2000, sixty-six and two-thirds percent of the state wide weekly wage has been greater than $326.00.

7.      Therefore, individuals whose weekly benefit amount was/is greater than $326 have been and continue to be illegally deprived of unemployment benefits to which they are statutorily entitled.

8.      This action is brought to stop SCDEW's illegal practice of capping benefits below the statutory maximum, and to obtain past benefits owed to Plaintiff and members of the putative class.

## THE PARTIES

9.      Plaintiff, Angela Eunice, is a resident of Williamsburg County, South Carolina.

10.     Defendant, SCDEW, is an agency of the State of South Carolina responsible for paying unemployment insurance benefits; collecting unemployment taxes; assisting in workforce placement; and collecting and disseminating state/federal employment statistics. SCDEW is responsible for administering the unemployment insurance program in South Carolina pursuant to the Social Security Act, 42 U.S.C § 503, Title 41 Chapters 27 through 41 of the South Carolina Code, and Chapter 47 of the South Carolina Code of State Regulations.

2

11.     Defendant, Director Ellzey, is the Executive Director of SCDEW.

## JURISDICTION AND VENUE

12.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 (federal question) because this action is brought under the federal Social Security Act, 42 U.S.C. § 503(a)(1) and 42 U.S.C. § 1983 (deprivation of rights); and 28 U.S.C. § 1367 (supplemental jurisdiction).

13.     The Court has personal jurisdiction over Defendants because SCDEW is organized under the laws of South Carolina, Director Ellzey is domiciled in South Carolina, and the actions at issue occurred (or failed to occur) in South Carolina.

14.     Venue is proper in this Court as a substantial part of the events or omissions giving rise to this claim occurred within this Federal District.

## FACTUAL ALLEGATIONS

### A. South Carolina's Unemployment Compensation System

#### a. Generally

15.     South Carolina's unemployment compensation system is part of a cooperative federal-state program established during the Great Depression. The purpose of the program (codified in Title III of the Social Security Act, 42 U.S.C. § 501 *et seq.*) is to provide cash assistance to workers after they lose employment. *See California Dep't of Human Resources Dev. v. Java*, 402 U.S. 121, 130 (1971) ("The objective of Congress was to provide a substitute for wages lost during a period of unemployment not the fault of the employee.").

16.     The Social Security Act requires state unemployment programs to maintain "methods of administration . . . reasonably calculated to insure **full payment** of unemployment compensation **when due**." 42 U.S.C. § 503(a)(1) (emphasis supplied). Following the direction of

3

the Supreme Court in *Java*,[1] the U.S. Secretary of Labor interpreted this requirement in the Social

Security Act "to require that a State law include provision for such methods of administration as

**will reasonably insure the full payment of unemployment benefits** to eligible claimants with

the greatest promptness that is administratively feasible." 20 C.F.R. § 640.3 (emphasis supplied);

*see also* S.C. Code Ann. § 41-29-230 ("In the administration of Chapters 27 through 41 of this

title, the department must cooperate with the United States Secretary of Labor to the fullest extent

consistent with the provisions of these chapters, and act, through the promulgation of appropriate

rules, regulations, administrative methods and standards, as necessary to secure to this State and

its citizens all advantages available under the provisions of the Social Security Act that relate to

unemployment compensation.").

17.    In addition to regular state unemployment benefits, significant federal benefits are

also paid through the state unemployment system, including: Pandemic Unemployment Assistance

(which provides unemployment-type benefits to self-employed, independent contractors, and gig

economy workers); Pandemic Unemployment Compensation (which aimed to provide $600

weekly supplements to unemployment insurance payments for payable benefit weeks before July

31, 2020); Lost Wages Assistance (which aimed to provide $300 weekly supplements for several

weeks in the fall of 2020 when the claimant was eligible for $100 or more in underlying state

benefits); Pandemic Emergency Unemployment Compensation (which provides additional weeks

---

[1] *California Dep't of Human Resources Dev. v. Java*, 402 U.S. 121, 125 (1971) .

of benefits once a claimant's regular unemployment or PUA benefits are exhausted); and Extended Benefits.

18.    South Carolina's unemployment program is set out in Title 41 Chapters 27 through 41 of the South Carolina Code and Chapter 47 of the South Carolina Code of Regulations.

19.    Section 41-72-20 expresses the public policy behind the South Carolina unemployment benefit program and provides a guide to the interpretation and application of Chapters 27 through 41 of Title 41:

> . . . the public policy of this State is declared to be as follows: Economic insecurity due to unemployment is a serious menace to health, morals and welfare of the people of this State; involuntary unemployment is therefore a subject of general interest and concern which requires appropriate action by the General Assembly to prevent its spread and to lighten its burden which so often falls with crushing force upon the unemployed worker and his family; the achievement of social security requires protection against this greatest hazard of our economic life; this can be provided by encouraging the employers to provide more stable employment and by the systematic accumulation of funds during periods of employment to provide benefits for periods of unemployment, thus maintaining purchasing power and limiting the serious social consequences of poor relief assistance. The General Assembly therefore declares that in its considered judgment the public good and the general welfare of the citizens of this State require the enactment of this measure, under the police powers of the State, for the compulsory setting aside of unemployment reserves to be used for the benefit of persons unemployed through no fault of their own.

20.    SCDEW describes Unemployment Insurance on its website as follows:

> Unemployment Insurance (UI) is a nationwide program created to financially help eligible individuals (also referred to as claimants), who are unemployed through no fault of their own, are able and available to work, and are actively searching for employment.
>
> The program allows UI recipients to maintain purchasing power, therefore, easing the serious effects of unemployment on individual households, the community, and the state. In South Carolina, a UI claim can provide up to

20 weeks of benefits. The average weekly benefit amount is $236. The maximum weekly benefit is $326.

Employers finance the UI program through tax contributions to the South Carolina Unemployment Insurance Trust Fund, and [SCDEW] is responsible for the collection, accounting and auditing functions of South Carolina's UI tax program. [SCDEW] administers the UI program according to guidelines established by the South Carolina Code of Laws, Title 41, and South Carolina Code of Regulations, Chapter 47.

SCDEW, https://www.dew.sc.gov/individuals (last visited July 1, 2021).

21.    South Carolina employers are responsible for financing the unemployment insurance program through quarterly tax contributions payable to the South Carolina Unemployment Insurance Trust Fund.  SCDEW maintains separate accounts for each employer. Taxes owed by employers are computed based on the amount of wages paid, and the weekly benefit payments are charged against those accounts. These funds are retained by SCDEW and are required to be paid pursuant to Title 41 Chapters 27 through 41 of the South Carolina Code and Title 47 of the South Carolina Code of Regulations to qualifying insured workers, as that term is defined in S.C. Code Ann. § 41-27-310.

22.    SCDEW makes clear that unemployment benefits are "not a form of relief or public assistance." *See* Applicant Reference Guide, at p. 4. *Available at* http://scdew.gov/docs/default-source/worksearch/work-search-all-rev-10-9-17.pdf?sfvrsn=7a452724_18.

23.    Instead, benefits payments are based on wages earned by the claimant, not on any individual need. *Id.*

24.    Under South Carolina Law, unemployment benefits become payable to any individual who is unemployed and eligible for benefits. *See* S.C Code Ann. § 41-35-10.

25.    An individual who is eligible for benefits is defined in the code as an "insured worker." S.C. Code Ann. § 41-27-310.

26.    Prior to receiving unemployment benefits, an unemployed worker[2] must file a claim with SCDEW to establish her status as an injured employee.

27.    In making the claim, the claimant provides SCDEW with identifying information and a detailed work history including wage information.

28.    When submitting the claim, the claimant certifies that the information is correct and acknowledges that, should he or she provide false information, they may be subject to criminal prosecution, fines, and other sanctions.

29.    After receiving the claim, SCDEW is responsible for reviewing this information, determining eligibility of the claimant, determining the benefit amount, and administering the benefit payment. *See* Applicant Reference Guide, at p. 5. *Available at*

---

[2] Referred to as a "claimant" in S.C. Code Ann. § 41-27-180 (" 'Claimant' means an individual who has filed a request for a determination of insured status, a request for initiation of a claim series in a benefit year, a notice of unemployment, a certification for waiting-week credit, or a claim for benefits.").

http://scdew.gov/docs/default-source/worksearch/work-search-all-rev-10-9-17.pdf?sfvrsn=7a452724_18.

30.    After reviewing the claim, SCDEW makes a determination as to whether the claimant qualifies as an "insured worker."[3] SCDEW informs the claimant by way of a monetary determination notice in which SCDEW informs the claimant whether they are an insured worker, the amount of qualifying wages, and the calculation of the claimant's benefit amount.

31.    If the claimant is an insured worker, after a one week waiting period,[4] the claimant will receive benefits in accordance with the notice.

### b.  How Weekly Unemployment Benefits Are Calculated

32.    Unemployment benefits are paid weekly, and the amount of the benefit is controlled by § 41-35-40, which provides how a claimant's weekly benefit is calculated and provides the minimum and maximum weekly benefits available:

> An insured worker's weekly benefit amount is fifty percent of his weekly average wage, as defined in Section 41-27-140, and the weekly benefit amount, if not a multiple of one dollar, must be computed to the next lower multiple of one dollar. However, no insured worker's weekly benefit amount

---

[3] An "insured worker" is an individual who has been paid wages in his base period for insured work equal to or exceeding one and one-half times the total of his wages paid in the quarter of such base period in which his wages for insured work were highest; provided, however, that no individual shall qualify as an insured worker unless he has been paid at least four thousand four hundred fifty-five dollars in his base period for insured work and one thousand ninety-two dollars in that quarter of his base period in which such wages were highest. S.C. Code Ann. § 41-27-310. In most cases, a "base period" is defined as the first four of the last five completed calendar quarters immediately preceding the first day of an individual's benefit year." S.C. Code Ann. § 41-27-150. "Benefit year" is defined in S.C. Code Ann. § 41-27-160.

[4] On March 19, 2020, Governor McMaster temporarily suspended the one week waiting period due to the COVID-19 pandemic. *See* Executive Order No. 2020-11. However, on May 6, 2021, Governor McMaster ordered SCDEW to lift the suspension of the one week waiting period effective June 30, 2021. *See* May 6, 2021, Letter to SCDEW Director Daniel Ellzey from Governor Henry McMaster. *Available at*: https://governor.sc.gov/sites/default/files/Documents/5-621%20Gov%20McMaster%20to%20Dir%20Ellzey%20re%20Federal%20UI%20benefit%20termination.pdf

8

> may be less than forty-two dollars nor greater than sixty-six and two thirds percent of the statewide average weekly wage most recently computed before the beginning of the individual's benefit year.

33.    Section 41-27-40 provides: "[t]he average weekly wage of an insured worker shall be determined by dividing his total wages paid for insured work in that quarter of his base period in which such wages were highest by thirteen."

34.    The "statewide average weekly wage" is computed by SCDEW on the first of July each year. S.C. Code Ann. § 41-27-360.

35.    For the last ten years, the "statewide average weekly wage" has been:

    a.  2021: $903.40

    b.  2020: $866.67

    c.  2019: $845.74

    d.  2018: $838.21

    e.  2017: $806.92

    f.  2016: $784.03

    g.  2015: $766.05

    h.  2014: $752.16

    i.  2013: $743.72

    j.  2012: $725.47

    k.  2011: $704.92

    SCDEW, https://wcc.sc.gov/claims/compensation-rates (last visited July 1, 2021) [5]

36.    The maximum weekly benefit amount, as defined in § 41-35-40, for each of the last ten years is sixty-six and two-thirds percent of the above statewide average weekly wages:

9

    a.  2021: $602.87

    b.  2020: $577.72

    c.  2019: $563.77

    d.  2018: $558.75

    e.  2017: $537.89

    f.  2016: $522.86

    g.  2015: $510.70

    h.  2014: $501.44

    i.  2013: $495.81

    j.  2012: $483.64

    k.  2011: $469.94

37.    Under the formula provided in § 41-35-40, the maximum benefit of $326 would apply to a year in which the statewide average weekly wage was approximately $489.05.

38.    The statewide average weekly wage has not been below $489.05 since 1999.

39.    On information and belief, the $326 cap on benefits was implemented in 2007 when the statewide average weekly wage was $645.94.

40.    Pursuant to § 41-35-40, the maximum benefit in 2007 should have been $430.

41.    Consequently, since at least 2007, SCDEW has illegally capped unemployment benefits, and every insured worker whose average weekly wage is greater than $652 has been illegally denied benefits by SCDEW.

10

### c. The $326 Cap on Weekly Benefits

42.     On information and belief, the $326 cap was initiated by Roosevelt Halley, former Executive Director of the South Carolina Employment Security Commission, in light of the impact of the great recession of 2007 on South Carolina's Unemployment Insurance Trust Fund. The South Carolina Employment Security Commission later became the South Carolina Department of Employment and Workforce (SCDEW).

43.     No statute or regulation was enacted to effect this cap.

44.     Indeed, a review of the South Carolina Code of Regulations shows no reference to any regulation allowing the Director to cap benefits below what is provided for in § 41-35-40, nor is there any reference to limiting benefits to $326.

45.     Further, SCDEW's enacting legislation contemplates a Director's powers when the solvency of the fund is at issue (§ 41-29-290), but this power is limited as it only provides that the Director may promptly inform the Governor and legislature of the issue and make

*recommendations* (not regulations) on how to address it. *See* S.C. Code Ann. § 41-29-290. (emphasis supplied).

46.    Finally, to the extent a regulation was lawfully passed to cap unemployment benefits at $326, such regulation would be invalid as it would be in direct conflict with a statutory law. *Id.*

### B. Factual Allegations Specific to the Named Plaintiff

47.    Prior to her unemployment, Angela Eunice worked for Clarios, LLC.

48.    For all wages paid to its employees, Clarios, LLC paid certain taxes to fund unemployment insurance for the benefit of employees who become unemployed by no fault of their own.

49.    The statutory scheme subjecting Clarios, LLC to these taxes created an implied contract under which Clarios, LLC would pay certain taxes, SCDEW would retain those taxes, and

should a Clarios, LLC employee become unemployed and qualify for benefits, SCDEW would

pay the employee full benefits to which they were entitled under South Carolina and Federal law.

50.     Angela Eunice, by no fault of her own, became unemployed on March 22, 2021.

51.     Angela Eunice applied to SCDEW for unemployment benefits on March 31, 2021.

52.     From SCDEW's calculations, Angela Eunice's high quarter earnings during her

base period were $14,642.35.

53.      Pursuant to § 41-27-40, Angela Eunice's average weekly wage for purposes of her

benefit calculation was $1,126.33.

54.     Under the formula in § 41-35-40, Angela Eunice's weekly unemployment benefit

should be $563.

55.     Though Angela Eunice was entitled to a weekly unemployment benefit of $563,

SCDEW limited her benefit to the illegal cap of $326.

56.     Thus, for each weekly period Angela Eunice is entitled to receive benefits, SCDEW

is illegally withholding $237.

57.     Angela Eunice did not challenge this determination through administrative

remedies, as any challenge would be futile. SCDEW has taken a uniform position that the

maximum weekly benefit is $326. *See* SCDEW, https://www.dew.sc.gov/individuals/how-unemployment-insurance-works/weekly-benefit-amount (last visited July 1, 2021).[6] Further,

---

[6] A commonly recognized exception to the requirement of exhaustion of administrative remedies exists when a party demonstrates that pursuit of administrative remedies would be a vain or futile act. *See Moore v. Sumter Cnty. Council*, 300 S.C. 270, 273 (1990); *see also Ward v. State*, 343 S.C. 14, 19 (2000); *and see Video Gaming Consultants, Inc. v. S.C. Dep't of Revenue*, 342 S.C. 34, 39 (2000). "Futility, however, must be demonstrated by a showing comparable to the administrative agency taking 'a hard and fast position that makes an adverse ruling a certainty.'" *Law v. S.C. Dep't of Corr.*, 368 S.C. 424, 438 (2006) (citing *Thetford Props. IV Ltd. P'ship v. U.S. Dep't of Hous. & Urban Dev.*, 907 F.2d 445, 450 (4th Cir.1990)).

Angela Eunice is not required to exhaust administrative remedies prior to filing this suit due to SCDEW acting outside of its authority in enforcing a $326 cap without authority.[7]

58.    SCDEW's current practice has and continues to damage Angela Eunice by wrongfully withholding $237 for each week she is entitled to unemployment benefits.

## CLASS ALLEGATIONS

59.    Plaintiff incorporates the foregoing allegations as if fully set forth herein.

60.    Plaintiff brings this action on behalf of herself and other similarly situated persons who were entitled to weekly unemployment benefits greater than $326.

61.    Director Ellzey and SCDEW are required under Federal law to administer South Carolina unemployment benefits to ensure full payment of benefits to qualifying workers.

62.    SCDEW and Director Ellzey have enforced a uniform policy of capping unemployment benefits at $326 for all persons receiving unemployment benefits in this state.

63.    Neither SCDEW nor Director Ellzey had legal authority to cap weekly unemployment benefits at $326.

64.    SCDEW and Director Ellzey's cap of $326 is illegal and continues to deprive unemployed workers of benefits to which they are statutorily entitled.

65.    South Carolina's statutory scheme dealing with unemployment benefits requires employers throughout South Carolina to pay taxes to fund the unemployment system, and SCDEW retains these taxes for the benefit of insured workers.

_____

[7] When an agency has acted outside of its authority, exhaustion of administrative remedies is not required. *See Responsible Econ. Dev. v. S.C. Dep't of Health & Env't Control*, 371 S.C. 547, 553 (2007).

66.     This statutory scheme creates an implied contract between employers and SCDEW for the benefit of insured workers. Under this agreement, SCDEW collects and retains taxes to fund unemployment benefits and is required to pay unemployment benefits out of these funds in accordance with South Carolina and Federal law.

67.     Under this implied contract, the insured workers are intended third party beneficiaries, as the entire arrangement is created for their benefit. *See* S.C. Code Ann. § 41-72-20. Under this agreement, the employers pay SCDEW and in return SCDEW is required to pay benefits in accordance with Title 41 Chapters 27 through 41 of the South Carolina Code and Chapter 47 of the South Carolina Code of Regulations.

68.     Defendants' actions violated Federal law, State law, and breached this implied contract, resulting in damages to unemployed workers who were entitled to weekly benefits greater than $326.

69.     Specifically, pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiff brings this action on behalf of herself, and all others similarly situated, as a representative of the following class (the "Class"):

> All insured workers, as that term is defined in section 41-27-310, who received unemployment benefits at any time between July 6, 2018, and the date of this complaint, whose weekly benefit as determined under the formula in S.C. Code Ann. § 41-35-40 was greater than $326.

70.     Class members did not challenge this determination through administrative remedies, as any challenge would be futile. SCDEW has taken a uniform position that the maximum weekly benefit is $326. *See* SCDEW, https://www.dew.sc.gov/individuals/how-unemployment-insurance-works/weekly-benefit-amount (last visited July 1, 2021). Further, Class

15

members are not required to exhaust administrative remedies prior to filing this suit due to SCDEW acting outside of its authority to enforce a $326 cap.

71.    Defendants' illegal capping of unemployment benefits directly and proximately resulted in damages to Class members.

72.    Defendants' illegal capping of unemployment benefits continues to directly and proximately cause damages to Class members.

## THE CLASS MEETS THE REQUIREMENTS OF RULE 23 OF THE FEDERAL RULES OF CIVIL PROCEDURE

73.    Plaintiff incorporates the foregoing allegations as if fully set forth herein.

74.    The Class is properly brought and should be maintained as a class action under Rule 23(a) of the Federal Rules of Civil Procedure because it satisfies the prerequisites of numerosity, commonality, typicality, and adequacy.

75.    *Numerosity:* The members of the Class are so numerous that joinder of all members is impracticable.  The exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery. However, from the period of June 20 to June 26, 2021, approximately 88,124 individuals received unemployment benefits from SCDEW.

76.    *Commonality:* The claims of Plaintiff and the members of the Class involve common questions of law and fact, which predominate over questions affecting only individual members of the Class, and which can be answered with common proof, including, *inter alia*, the following: (1) whether the $326 cap violated South Carolina law; (2) whether the $326 violated Federal law; (3) whether an implied contract existed between employers and SCDEW; (4) whether Plaintiff class members are intended third party beneficiaries of that implied contract; (5) whether Defendants' practice of capping weekly benefits at $326 should be enjoined; (6) whether

16

Defendants should be ordered to pay benefits in accordance with South Carolina and Federal law; and (7) whether Plaintiff and Class members are entitled to damages as a result of Defendants' $326 cap.

77.    *Typicality:* Plaintiff's claim is typical of those of the members of the Class because her claim has the same essential characteristics as the claims of the Class members, and their claims arise from the same course of conduct by Defendants.  Plaintiff and all of the members of the Class are insured workers entitled to a weekly benefit in excess of $326.  Defendants' actions in applying the $326 was a statewide policy, uniformly applied to anyone receiving unemployment benefits. As such, the illegal $326 was applied in identical fashion to Plaintiff and Class members.  Plaintiff and Class members were all direct beneficiaries of the implied contract between their employers and SCDEW. This contract directly confers unemployment benefits to Plaintiff and Class members, and as third-party beneficiaries, Plaintiff and Class Members have standing to enforce this contract. As to Plaintiff and all Class members, Defendants violated South Carolina law, Federal law, and breached this implied contract in an identical manner *i.e.*, by enforcing an illegal cap of $326 on Plaintiff and Class members who were entitled to benefits exceeding $326.

78.    *Adequacy:* Plaintiff will fairly and adequately represent the interests of all members of the Class.  Plaintiff's claims are common to all members of the Class and Plaintiff has strong interests in vindicating their rights.  Plaintiff is represented by counsel experienced in complex, class action litigation. Neither Plaintiff nor Plaintiff's counsel has any interests adverse to, or in conflict with, any absent class member.

79.    The amount in controversy for all Class members exceeds one hundred dollars.

**THE CLASS MEETS THE REQUIREMENTS OF RULE 23(b)**

80.    Plaintiff incorporates the foregoing allegations as if fully set forth herein.

81.    The Class may be maintained pursuant to Rule 23(b)(1), (b)(2), and/or (b)(3).

82.    Certification of the Class is appropriate pursuant to Rule 23(b)(1)(A) because the prosecution of separate actions by individual class members would create a risk of inconsistent or varying adjudications with respect to individual class members which would establish incompatible standards of conduct for Defendants.

83.    Certification of the Class is also appropriate pursuant to Rule 23(b)(2).  Defendants have acted or refused to act on grounds that apply generally to the members of the Class, so that final injunctive relief is appropriate respecting the Class as a whole.   Defendants have systematically capped weekly benefits at $326 depriving the Class of benefits to which they are legally entitled, thereby making final injunctive relief appropriate with respect to the Class as a whole.  In particular, any final injunctive relief would apply to the entire Class as the rights of all Class members can be addressed in one order requiring Defendants to calculate and pay benefits in accordance with Title 41 Chapters 27 through 41 of the South Carolina Code.

84.    Certification of the Class is also appropriate pursuant to Rule 23(b)(3) because common questions of law and fact that exist as to all members of the Class are central to the adjudication of this action and predominate over any questions solely affecting individual members of the Class.

85.    Moreover, a class action is superior to other available methods for the fair and efficient adjudication of this controversy in that, among other factors:

(a) The interests of the Plaintiff and Class Members in individually controlling the prosecution of separate actions are outweighed by the advantages of adjudicating the common issues of fact and law by means of a class action;

(b) The expense of prosecuting Plaintiff's and Class Members' claims individually would significantly exceed any economic benefit Plaintiff or Class members could realize individually, and individual litigation would overload court dockets and magnify the delay and expense to all parties, making individual litigation of liability and damages economically impractical and infeasible;

(c) It is desirable that litigation of the claims occur for the Class in this forum to preserve the resources of both the courts and the litigants, and to reduce the risk of varying and inconsistent adjudications that could occur in individual adjudications; and

(d) Little, if any, difficulty is likely to be encountered in management of this class action because applicable law and contract terms will uniformly apply to the claims of the Class.

### <u>FOR A FIRST CAUSE OF ACTION</u>
**(As to Director Ellzey, in his Official Capacity)**
**42 U.S.C. § 1983 – Denial of Rights Under Social Security Act**

86.    Plaintiff incorporates the foregoing allegations as if fully set forth herein.

87.    Title III of the Social Security Act of 1935, 42 U.S.C. §§ 501-504, and 20 C.F.R. § 640.3(a) require that state unemployment compensation laws provide for such methods of administration as will reasonably ensure the full payment of unemployment benefits to eligible claimants when due and with the greatest promptness that is administratively feasible.

19

88.    The United States Department of Labor defines "any payment that . . . was made in an incorrect amount under statutory, contractual, administrative, or other legally applicable requirements. . ." as improper. 2 C.F.R. § 200.53(a) (2015).

89.    Further, SCDEW must cooperate with the United States Department of Labor.  *See* S.C. Code Ann. § 41-29-230 ("In the administration of Chapters 27 through 41 of this title, the department must cooperate with the United States Secretary of Labor to the fullest extent consistent with the provisions of these chapters, and act, through the promulgation of appropriate rules, regulations, administrative methods and standards, as necessary to secure to this State and its citizens all advantages available under the provisions of the Social Security Act that relate to unemployment compensation.").

90.    Director Ellzey acted under color of State law when enforcing the $326 cap.

91.    By capping benefits through an illegal cap of $326, SCDEW, under the direction of Director Ellzey, failed and continue failing to make full payment of unemployment benefits.

92.    By capping benefits in violation of statutory law (§ 41-35-40), the resulting underpayment qualifies as an improper payment as defined by the United States Department of Labor. *See* 2 C.F.R. § 200.53(a).

93.    Defendants' actions in illegally capping benefit payments violate the Social Security Act, 42 U.S.C. § 503(a)(1), and its implementing regulations.

94.    As a result of these violations, Plaintiff and the Class have been deprived of their rights secured by the Laws of the United States, specifically the right to receive full unemployment benefits when due.

95.    The deprivation of this right by Defendants has and continues to directly and proximately cause damages to Plaintiff and the Class.

## FOR A SECOND CAUSE OF ACTION
### (As to All Defendants)
### Unjust Enrichment/Quantum Meruit/Contract Implied in Law

96.    Plaintiff incorporates the foregoing allegations as if fully set forth herein.

97.    Plaintiff and the Class earned wages from their employers prior to unemployment.

98.    Based upon these wages, Plaintiff and the Class's prior employers paid certain taxes to SCDEW for the benefit of future unemployed workers, like Plaintiff.

99.    These taxes were realized by SCDEW.

100.    These monies were to be retained by SCDEW for the benefit of unemployed workers like Plaintiff and the Class.

101.    At the time these benefits became due, Defendants illegally capped the benefits, depriving Plaintiff and the Class of benefits to which they were statutorily entitled.

102.    As a result, SCDEW has and continues to retain monies which, under South Carolina and Federal law, should have been paid to Plaintiff and the Class.

103.    Allowing SCDEW to retain monies, which would otherwise be paid to Plaintiff and the Class absent this illegal cap, would be unjust and inequitable.

104.    Defendants' inequitable practice of illegally capping benefits has directly and proximately caused monetary damages to Plaintiff and the Class.

## FOR A THIRD CAUSE OF ACTION
### (As to All Defendants)
### Breach of Contract Implied In-Fact/Third-Party Beneficiary

105.    Plaintiff incorporates the foregoing allegations as if fully set forth herein.

106.    Plaintiff and the Class earned wages from their employers prior to unemployment.

107.    Based upon these wages, the Plaintiff and the Class's prior employers paid certain taxes to SCDEW for the benefit of future unemployed workers, like Plaintiff and the Class.

108.    The essential purpose of the taxes paid by the Class's prior employers to SCDEW was to provide unemployment benefits to eligible former employees following the termination of their employment in accordance with S.C. Code Ann. § 41-35-10, *et seq.*

109.    By payment of these taxes, the Class's prior employers contributed to the SC Unemployment Insurance Trust Fund with the express expectation and intent that SCDEW would direct and provide all benefits required under S.C. Code Ann. § 41-35-10, *et seq*. to qualifying former employees.

110.    The taxes paid by the Class's prior employers were realized by SCDEW and were collected and maintained by SCDEW for the express purpose and intent of providing unemployment insurance benefits to qualifying unemployed workers like Plaintiff and the Class.

111.    Both SCDEW and the Class's prior employers intended that these payments should directly benefit qualifying unemployed workers like Plaintiff and the Class in the form of unemployment benefits paid according to statutory requirements.

112.    At the time these benefits became due, Defendants illegally capped the benefits, depriving Plaintiff and the Class of monies of which they were the intended direct beneficiary.

113.    As a result, SCDEW has and continues to retain monies that prior employers of Plaintiff and the Class provided to SCDEW with the intent that those monies would be paid to qualifying former employees, including Plaintiff and the Class.

114.    As intended third-party beneficiaries of the implied contract between SCDEW and prior employers, Plaintiff and the Class are entitled to pursue remedies for breach of the implied contract by Defendants.

115.    Defendants have breached this implied contract and as a direct and proximate result, Plaintiff and the Class have and continue to suffer monetary damages.

### JURY TRIAL DEMANDED AND PRAYER FOR RELIEF

116.    WHEREFORE, Plaintiff demands a jury trial and prays for judgment against the Defendants and:

a.   that summons and process issue to the Defendants as required by law;

b.   that Plaintiff, individually, recover compensatory damages for the underpayment of unemployment benefits by Defendants;

c.   that the Court certify the Class requested herein, and find that that Plaintiff is an appropriate representative of the Class;

d.   that the Court find that the undersigned counsel fairly and adequately represents and protects the interests of the Class, and certify the undersigned counsel to act as counsel for the Class;

e.   that judgment be entered against Defendants, finding that they deprived Plaintiff and Class of rights secured by the Laws of the United States;

f.   that judgment be entered against Defendants in such amount as will fully and adequately compensate Plaintiff and the other Class members;

g.   that the Court issue an order enjoining Defendants from enforcing the $326 cap, and requiring that Defendants calculate weekly unemployment benefits in accordance with Title 41 Chapters 27 through 41 of the South Carolina Code, to include capping benefits at sixty-six and two-thirds percent of the statewide average weekly wage, as provided in § 41-35-40;

23

h.  that Plaintiff and the Class be awarded the just and proper equitable relief requested;

i.  that the Court award Plaintiff and members of the Class their costs;

j.  that the Court award Attorney's fees as provided for under Federal and South Carolina law;

k.  that Plaintiff have a trial by jury with respect to her legal claims; and

l.  that the Court grant such other and further relief as it deems just and proper.

 Respectfully submitted,

RICHARDSON, THOMAS, HALTIWANGER, MOORE & LEWIS, LLC

BY:    *s/William C. Lewis*

William C. Lewis (Fed ID 12076)
Terry Richardson (Fed ID 3451)
1513 Hampton Street, First Floor
Columbia, South Carolina 29201
T: (803) 281-8145
F: (803) 632-8263
will@richardsonthomas.com
terry@richardsonthomas.com

SABB LAW GROUP, LLC
Ronnie A. Sabb (Federal ID 3942)
Kimberly V. Barr (Federal ID 6631)
Doward K. Harvin (Federal ID 11778)
108 West Main Street
Post Office Box 88
Kingstree, South Carolina 29556
(843) 355-5349

PIERCE SLOAN
KENNEDY & EARLY, LLC
321 East Bay Street
Charleston, South Carolina 29401
P: (843) 722-7733

24

R. Richard Gergel (Fed ID 13170)
J. Morgan Forrester (Fed ID 12129)
Carl E. Pierce, II (Fed ID 3062)
Allan P. Sloan, III (Fed ID 6268)

*Attorneys for Plaintiff and the Class*

Columbia, South Carolina
July 6, 2021